**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jean Reidhead, et al., | No. CV 07-8027-PCT-MHM |
| Plaintiffs/Counterdefendants, | **ORDER** |
| vs. | |
| Joseph P. Myers, et al., | |
| Defendants/Counterclaimants. | |

Currently pending before the Court is Defendants/Counterclaimants Caribbean Financial Corporation ("CFC")'s Motion for Default Judgment, or in the alternative, Motion for Summary Judgment. (Dkt.#76). After reviewing the record and determining oral argument unnecessary, the Court issues the following Order.

**I.  BACKGROUND**

The Court has issued several Orders during the course of this protracted litigation. To establish as clear a record as possible, the Court will once again set forth the procedural history of this dispute. The claims involved in this case arose from the transfer of property and the sale of ore in Navajo County, Arizona. Plaintiffs/Counterdefendants Jean Reidhead, Patrick Kent Reidhead, and Reidhead Sand & Rock, Inc. ("the Reidheads") filed their original Complaint in Navajo County Superior Court on May 4, 2007. On June 4, 2007, Defendants removed the case to federal court. (Dkt.#1). Following the filing of a dismissal motion by CFC, the Court granted the Reidhead's leave to amend their Complaint, and on

1 February 4, 2008, the Reidheads lodged an Amended Complaint with the Court. (Dkt.#18).
2 CFC responded by filing a second Motion to Dismiss arguing that all of the Reidhead's
3 claims were time-barred. (Dkt.#21). CFC also requested an award of attorneys' fees that were
4 incurred in association with their second Motion to Dismiss. (Id.).

5 The Reidheads completely failed to respond to CFC's second Motion to Dismiss.
6 Accordingly, on April 23, 2008, the Court granted CFC's second Motion to Dismiss and
7 dismissed all of the Reidhead's claims with prejudice. (Dkt.#22). That same day, the
8 Reidheads filed a Motion for Leave to File a Delayed Response and to Vacate the Court's
9 Order. (Dkt.#23). After advising counsel for the Reidheads that he should seek timely leave
10 of the Court when requesting extensions of time, the Court directed the Reidheads to file a
11 Response, and stayed its decision on the Reidhead's Motion to Vacate the Order. (Dkt.#24).
12 On April 25, 2008, the Reidheads filed their Response, (Dkt.#26), and CFC replied on May
13 5, 2008. (Dkt.#27).

14 On July 1, 2008, the Court granted the Reidhead's Motion to Vacate. (Dkt #29). The
15 Court stated that "in light of Plaintiffs' Response alerting the Court to their claims of
16 equitable tolling, the Court finds it appropriate to vacate its April 23, 2008 Order, which
17 dismissed Plaintiff's claims with prejudice . . .." (Id.). In the same Order, the Court granted
18 CFC's second Motion to Dismiss, but this time dismissed the Reidhead's claims without
19 prejudice and with leave to file another Amended Complaint. (Id.). In effectuating a
20 dismissal without prejudice, the Court noted that "Plaintiffs have not alleged equitable tolling
21 in their Amended Complaint. Nor have Plaintiffs alleged any facts to show they were
22 unaware of the scheme to defraud or when it was they eventually 'discovered' the scheme."
23 (Id.). The Court further advised the Reidheads that "an amended complaint supercedes the
24 original complaint and any documents attached to the original complaint must also be
25 attached to the amended complaint or their reference will be waived." (Id., p. 5) (citations
26 omitted). The Court required the Reidheads to attach to their forthcoming second Amended
27 Complaint any documents they wished the Court to consider as part of their pleading, and
28 that failure to do so would result in waiver of reference to any documents not attached. (Id.).

1 | The Court then ordered the Reidheads to file a second Amended Complaint by close of
2 | business, July 25, 2008. (Dkt.#30).

On July 25, 2008, the Reidheads lodged their second Amended Complaint, alleging the following claims: (1) Rescission Based on Fraud; (2) Breach of Duty of Good Faith and Fair Dealing; (3) Quiet Title; (4) Breach of Contract; and (5) Punitive Damages. (Dkt #32). CFC responded by filing a third Motion to Dismiss on August 1, 2008, again arguing that all of the Reidhead's claims violated the applicable statute of limitations. (Dkt #33). CFC also requested an award of attorneys' fees incurred in association with their prior pleadings to date and their third Motion to Dismiss. (Id.). The Reidheads filed a Response on August 25, 2008, (Dkt.#36), and CFC filed a Reply on September 5, 2008. (Dkt #37).

On December 10, 2008, the Court finally dismissed all claims contained in the Reidhead's second Amended Complaint with prejudice and granted in part CFC's request for attorneys' fees. (Dkt.#38). The Court determined that all five of the Reidhead's claims were indeed barred by the statute of limitations, and that despite the Court's patience, the Reidheads had failed to allege facts, which even if taken as true, would entitle the Reidheads to rely on the seldom invoked doctrine of equitable tolling. (Id.); see Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996). Following dismissal of the Reidhead's second Amended Complaint, only CFC's counterclaims remained. CFC's Counterclaims alleged: (1) Breach of Contract; (2) Conversion; (3) Constructive Fraud; (4) Trespass; (5) Breach of Implied Covenant of Good Faith and Fair Dealing; (6) Ejectment; (7) Slander of Title; (8) Unjust Enrichment; (9) Specific Performance—Easment; (10) Punitive Damages. (See Dkt.#34).

On December 12, 2008, the Clerk of the Court entered default against the Reidheads, who at the time had not yet answered CFC's counterclaims. (Dkt.#41). The Reidheads filed a Motion to Set Aside Entry of Default on December 18, 2008. (Dkt.#42). On December 19, 2008, the Court granted the Reidhead's Motion and ordered them to file an Answer within 30-days. (Dkt.#43).

1   The Court then issued a Scheduling Order on March 2, 2009, (Dkt.#52), in which it set an October 16, 2009 deadline for the completion of all fact discovery, noting that "[a]ll depositions must be scheduled to commence at least five business days prior to the discovery deadline." (Id.) (emphasis omitted).

A turbulent period of discovery soon followed. CFC issued requests for written discovery—requests for production, requests for admission and interrogatories—to the Reidheads that were due on or before September 14, 2009. (See Dkt.#76). On October 20, 2009, the Court held a discovery dispute hearing to resolve the Reidhead's outstanding discovery responses, (Dkt.#64), at which time the Court extended the discovery deadline until November 3, 2009 and the dispositive motion deadline to December 3, 2009. (Id.). In addition, Counsel for the Reidheads represented to the Court at the hearing that the delays in discovery could be attributed to a serious and unexpected illness that Counsel had been afflicted with, and the illness unfortunately required extensive hospital visits and medical treatment. Counsel for the Reidheads also made representations to the Court that he had never actually received delivery of the discovery requests (despite evidence in the record that he had negotiated with opposing counsel for an extension and a receipt showing that the requests were hand-delivered to Counsel for the Reidhead's business address). (See Dkt.#63).

On October 22, 2009, CFC moved for clarification on the Court's discovery dispute Order. (Dkt.#65). In its Motion, Counsel for CFC stated that he understood the Court's Order as extending the discovery deadline for the sole purpose of requiring the Reidheads to provide responses to the outstanding discovery requests, but not otherwise providing a blanket extension of all fact discovery. (Id.). Counsel for CFC noted that he did not believe that the Court's Order permitted the Reiedheads to take a belated deposition of Mr. Joesph P. Meyers, as Counsel for the Reidheads had indicated. (Id.). Counsel for CFC also requested that the Court provide the Reidheads with a date certain for responding to all outstanding discovery requests, as Counsel for the Reidheads was continually unable to meet promised deadlines for the submission of the belated documents. (Id.).

1        On October 27, 2009, Counsel for the Reidheads filed a Motion for an Extension of Time. (Dkt.#66). In the Motion, Counsel for the Reidheads noted that he would not be able to provide Counsel for CFC with the long awaited discovery responses by October 27th, due to contracting another significant illness. (Id.). CFC opposed the Reidhead's request for an extension, arguing that it had still not received any responses to its requests for production and the responses to the interrogatories that it had been received were completely unacceptable due to vagueness. (Dkt.#68).

        On November 11, 2009, Counsel for the Reidheads filed with the Court a notice of a discovery dispute. (Dkt.#67). The Reidhead's discovery dispute notice restated Counsel's request for an extension of time, highlighting his recurrent illness and the adverse effect that it was having on his ability to meet Court imposed deadlines. (Id.).

        In order to accommodate Counsel for the Reidheads, on November 16, 2010, the Court issued an Order extending all fact discovery in the case until December 16, 2009. (Dkt.#69). The Court further ordered that by the close of discovery, the Reidheads "must provide responses to all of Caribbean Financial Corporation's written document requests while also providing specific facts and documents that the Reidheads allege are supportive of their defenses, rather than conclusory assertions with no reference to dates, times, documents or locations." (Id.). Lastly, given the extraordinary delay that had occurred during the prosecution of the Reidhead's initial claims and the fact that this delay had seemingly infected the Reidhead's defense of CFC's counterclaims, the Court reluctantly noted that failure on the part of the Reidheads to adhere to these firm deadlines "may likely result in the Court entering a default judgment against [the Reidheads]." (Id.).

        On December 15, 2009, the Reidheads filed a "Certificate of Service of Plaintiffs' Answers to Defendant Counterclaimant's Request for Production." (Dkt.#72). There is nothing to show that any other discovery took place during this time period, including the deposition of Mr. Meyers.

        On January 15, 2010, CFC moved the Court for a default judgment against the Reidheads on CFC's counterclaims, or in the alternative, summary judgment. (See Motion

1 as Amended, Dkt.#76). On January 27, 2010, the Reidheads once again requested an
2 extension of time from the Court; this was a 60-day extension allegedly needed to adequately
3 respond to CFC's dispositive motion. (Dkt.#74). The Reidhead's Motion contended that
4 their Counsel needed additional time to gather counterveiling facts to oppose CFC's
5 summary judgment motion, including obtaining additional affidavits and declarations. On
6 April 8, 2010, the Court issued an Order noting that because the 60-day period specified by
7 the Reidheads had come and gone without a response filed, the Motion for an Extension
8 Time was now moot. (Dkt.#77). The Court then directed the Reidheads to file a response by
9 April 14, 2010. (Id.). The Reidheads responded on April 14, 2010, (Dkt.#78), and CFC
10 replied on May 5, 2010. (Dkt.#79).

## II. ANALYSIS

While "the strong policy underlying the Federal Rules of Civil Procedure favor[s] decisions on the merits," Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986), for a variety of reasons not all cases are capable of being resolved in such a manner. The Ninth Circuit has consistently reaffirmed the inherent power of district courts to control their dockets and "[i]n the exercise of that power . . . impose sanctions including, where appropriate, default or dismissal of a case." Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986). A dismissal or entry of default is considered an appropriate sanction for flagrant violations of court orders. See, e.g. Hingano v. Channing & Ass'n, LLC, 2010 U.S. Dist. LEXIS 5558, *3-4 (E.D. Cal. Jan. 4, 2010) (citing Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987)). In determining whether to impose a default judgment for failure to comply with a court order, a district court weighs five factors "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (internal citations omitted).

After carefully evaluating the relevant factors, the Court is of the firm opinion that all factors favor the summary resolution of this matter by way of default judgment. During the

three years this case has been pending on the Court's docket, the Reidheads have displayed a consistent inability to comply with this Court's most basic procedural Orders, and the dilatory manner in which they have conducted discovery has prejudiced CFC's prosecution of its counterclaims. Because the Reidheads have failed to provide adequate or timely responses to CFC's otherwise reasonable requests for information, the Court is presently unable to assess the legal merit of CFC's Motion for Summary Judgment. Even a cursory review of the docket indicates this Court's patience with the Reidheads. The Court has repeatedly modified its Orders to accommodate Counsel for the Reidheads and his repeated delays. The Court's patience is, however, not unlimited, and there comes a point in time where accommodating one side too greatly prejudices the opposition.

In its November 16, 2009 Order, the Court expressly warned the Reidheads that default judgment was a potential outcome of this litigation should they continue to remain unable to provide CFC with "responses to all of Caribbean Financial Corporation's written document requests while also providing specific facts and documents that the Reidheads allege are supportive of their defenses, rather than conclusory assertions with no reference to dates, times, documents or locations." (Dkt.#69). Despite this stern warning, there is nothing in the record indicating that the Reidheads submitted or even attempted to submit comprehensive discovery requests that would satisfy the Court's clear directive.[1]

By way of background, the Court's Order requiring more specific discovery responses was necessitated by the fact that the Reidheads were defending CFC's counterclaim based on CFC's allegedly fraudulent acts. Because Arizona requires that fraud be plead with

---

[1]Although on December 15, 2009, the Reidheads filed a notice with the Court that they had served CFC with responses to CFC's requests for production, answering CFC's requests for production by itself did not constitute compliance with the Court's November 16, 2009 Order. It should have been obvious to the Reidheads, based on the extensive litigation before this Court on the issue of their inadequate discovery responses, that the Reidheads were obligated to provide CFC with much more comprehensive discovery responses, including, but not limited to, revised responses to CFC's Non-Uniform Interrogatories.

1  particularity even as a defense, <u>Fruth v. Divito</u>, 546 P.2d 1163, 1165 (Ariz. Ct. App. 1976)
2  ("Rule 9(b), Rules of Civil Procedure, […] requires that 'the circumstances constituting fraud
3  or mistake shall be stated with particularity,' and this is equally true when fraud is a defense
4  to an action."), CFC was entitled to discovery responses from the Reidheads that contained
5  some elementary degree of specificity as to the fraudulent acts alleged. Instead of providing
6  CFC with specific answers, the Reidhead's discovery responses–which were extremely
7  untimely—contained only vague and conclusory allegations that either: 1) repeat the same
8  conclusory allegations contained in the Reidheads' Answer (which is styled as a reply) to
9  CFC's counterclaims; or 2) fail to provide any details regarding the additional fraud defense
10 that the Reidheads appear to assert in response to the counterclaims. Not only did the
11 Reidheads fail to provide adequate responses to CFC's discovery requests, but the Reidheads
12 seemingly did not conduct any discovery of their own.  Notwithstanding the Reidheads
13 failure to conduct fact discovery—even though the Court extended the fact discovery
14 deadline at their request—the Reidheads responded to CFC's Motion for Summary Judgment
15 by arguing that the Court should refrain from issuing a ruling until the Reidheads are granted
16 the opportunity to depose Mr. Joseph P. Meyers. (<u>See</u> Dkt.# 78 at 2).  As CFC stated in its
17 Reply brief, the Reidhead's request for additional discovery strains credulity considering the
18 Reidheads did not notice Mr. Meyer's deposition on the Court's docket and never followed
19 up on CFC's Counsel's offer to set a deposition date during the discovery period.  In
20 addition, the Reidhead's Response brief was supported by a bevy of new affidavits and
21 declarations, the substance of which were not disclosed to CFC in discovery.  The
22 Reidhead's submissions, along with their belated request to depose Mr. Meyers, are
23 indicative of the Reidhead's pattern of unreasonable delay, their disregard for the Court's
24 case management schedule, and the resultant prejudice of their actions.
25      For these reasons, the Court has no alternative but to reluctantly enforce its previous
26 warning and enter a default judgment against the Reidheads on CFC's counterclaims.
27 / / /
28

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part and denying in part Caribbean Financial Corporation's Motion for Default Judgment or in the alternative, Motion for Summary Judgment. (Dkt.#76). The Motion for Default Judgment is **GRANTED**. The Motion for Summary Judgment is **DENIED** as moot.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

DATED this 7th day of June, 2010.

_____
Mary H. Murguia
United States District Judge