**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jean Reidhead, et al., | ) | No. CV 07-8027-PCT-MHM |
| | ) | |
| Plaintiffs/Counterdefendants, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Joseph P. Myers, et al., | ) | |
| | ) | |
| Defendants/Counterclaimants. | ) | |
| | ) | |
| | ) | |

Currently pending before the Court is Defendants/Counterclaimants Caribbean Financial Corporation ("CFC")'s Motion for Attorneys' Fees and Damages. (Doc. 82), and Motion for Leave to File a Reply Brief, (Doc. 84). After reviewing the pleadings and determining oral argument unnecessary, the Court issues the following Order.

On June 7, 2010, this Court issued an Order granting CFC's Motion for Default Judgment as to its counterclaims against Plaintiffs/Counterdefendants Jean Reidhead, Patrick Kent Reidhead, and Reidhead Sand & Rock, Inc. ("the Reidheads"). On June 8, 2010, the Court issued a follow-up Order, which noted that because CFC's briefing had not addressed the issue of damages, CFC would be required to show cause regarding whether CFC was entitled to damages on its counterclaims. (Doc. 81). The Court noted that the Reidheads

would have 14 calender days to respond to CFC's damages briefing. On June 30, 2010, CFC moved the Court to award damages and attorneys' fees. (Doc. 82). On July 13, 2010, the Reidhead's responded in opposition. (Doc. 83). On July 23, 2010, CFC requested leave to reply while simultaneously lodging a proposed reply brief. (Doc. 84).

## I.    ANALYSIS

For judicial economy purposes, the Court will not restate the entire procedural and factual history of this lawsuit.    Interested parties may refer to the Court's June 7, 2008 Order, which is located at docket number 80, for a more complete background of the dispute between the Reidheads and CFC.  In sum, despite the Court's repeated efforts to permit the Reidheads to litigate their claims and defend CFC's counterclaims on the merits, Counsel for the Reidhead's repeated inability to comply with the Court's clear directives forced the Court to reluctantly enter default judgment against the Reidheads on each of CFC's counterclaims. As CFC notes in its Motion for Damages and Attorneys' Fees, the counterclaims in this case arise from the Reidheads' interference and misappropriation of CFC's assets that had been retained as a result of interests CFC held in various properties in Arizona. According to its counterclaim, CFC discovered that the Reidheads had been unilaterally removing high grade cinders from the property and converting the materials to their own use, even though the high grade cinders belonged to CFC.  Furthermore, as alleged by CFC, during a routine inspection of the Reidheads' property, CFC discovered that the cinders formerly located on the premises were missing.  The counterclaim further alleges that notwithstanding CFC's clear title to the subject property, the Reidheads made slanderous statements regarding the subject property. Specifically, CFC contends that the Reidheads made statements to third parties that the

subject property was subject to a clouded title. As per the counterclaim, these statements discouraged potential buyers and real estate agents from buying or marketing the property, resulting in CFC losing an offer to purchase the property for $350,000. Due to the Reidheads' slanderous actions, CFC claims that it had been informed by local real estate professionals that selling the property for even $100,000 in Arizona's currently depressed housing market was likely unfeasible.

In its Motion for Damages and Attorneys' Fees, CFC claims that because the issue of liability has been resolved, and because CFC provided the Court with evidence and a reasonable factual predicate in connection with its counterclaims, disclosure statements and its Motion for Default Judgment/Motion for Summary Judgment, an evidentiary hearing on the damages issue is unnecessary. CFC notes that courts in the District of Arizona and throughout the Ninth Circuit have held that, "[w]hen the damages sought are a definite sum or easily computable from the facts alleged in the complaint, an evidentiary hearing is not required." Sony Music Enm't v. Miernicki, 2009 U.S. Dist. LEXIS 69865, *2-3 (D. Ariz. Aug. 3, 2009). (citing Davis v. Fendler, 650 F.2d 1154, 1161-62 (9th Cir.1981) (affirming default judgment entered without evidentiary hearing).

Turning to the issue of purported damages, CFC contends that it is entitled to three categories of damages in this action: (1 ) $1.4 million in consequential damages suffered by CFC as a result of the Reidheads' failure to provide certain cinders under the Agreement for the Sale of Ore; (2) $1 million in damages to account for the lost value of converted cinders that could have been used as construction fill; and (3) $350,000 in damages for the value of the subject property that CFC was unable to sell based on the Reidheads' slander of title.

CFC notes that it has provided sufficient evidence to justify the Court awarding its requested award. In addition, CFC has requested attorneys' fees in an amount totaling approximately $91,000.

As to consequential damages, CFC contends that the factual basis for consequential damages was adequately addressed in the form of an affidavit submitted by Mr. Joseph Meyers that was attached to CFC's Motion for Default Judgment/Motion for Summary Judgment. Mr. Meyers' affidavit sets forth how CFC loaned approximately $1,435,860.18 to Apache, Azteca and Industrias, and that CFC made the loans in anticipation of the Reidheads delivering high grade cinders for processing.

As to the value of cinders that were converted by the Reidheads, CFC alleges that the value of these cinders can be measured either by the precious metals that could be extracted from the cinders or the value of the cinders when used as construction fill material. CFC alleges that, in light of its factual submissions, the value of approximately 250,000 tons of cinders used as construction fill can be easily computed to $1,000,000 in compensatory damages. CFC also contends that the Court may award a larger compensatory damages award on its conversion claim by measuring the full value of the cinders when used in metals processing. CFC argues that the value of the cinders can be ascertained by way of determining the value of the precious metals that could have been extracted from the cinders. According to CFC, the value of such precious metals would have been upwards to $25,000 to $50,000 per ton. While CFC argues that it would prefer to be compensated at the value of the converted materials as used in metals processing, in the interests of judicial economy and bringing resolution to this matter, CFC concedes that if it will avoid an evidentiary

hearing on damages, CFC will defer to the Court's judgment and accept the reduced damages amount of $1 million as an appropriate measure of damages on its conversion claim.

As to CFC's slander of title action, CFC argues that it has adequately demonstrated how the Reidheads made statements asserting an ownership interest in a piece of property in Taylor, Arizona, even though CFC possessed title to the land. CFC notes that the Reidhead's assertions caused potential buyers to abandon their attempts to purchase the subject property. CFC notes that it lost at least one purchase offer on the property due to the Reidhead's actions, and that at the time the offer for purchase of the property was set at $350,000. CFC requests damages at the full amount of the lost purchase offer.

Finally, with respect to attorneys' fees, CFC notes that under Arizona state law, it is eligible for attorneys' fees pursuant to A.R.S. § 12-341.01 and § 12-349. To this end, CFC notes that A.R.S. § 12-341.01 permits a prevailing party to recover reasonable attorneys' fees "[i]n any contested action arising out of a contract, express or implied," A.R.S. § § 12-341.01, and that attorneys' fees are recoverable under the statute for certain tort claims that are "interwoven" with a contract or "arise out" of the parties contractual relationship. See Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc., 6 P.3d 315, 318 (Ariz. Ct. App. 2000). In the alternative, CFC requests that the Court award attorneys' fees pursuant to A.R.S. § 12-349, which permits a court to award fees against a party who (1) brings or defends a claim without substantial justification; (2) brings or defends a claim solely or primarily for delay or harassment; or (3) unreasonably expands or delays the proceedings. CFC also cites to the six factor approach for evaluating the merit of an award of attorneys' fees promulgated by the Arizona Supreme Court. See Wagenseller v. Scottsdale Memorial Hosp., 710 P.2d 1025,

1049 (Ariz. 1985). CFC contends that an award of $91,192.50 is justified under all six of the Wagenseller factors.

The Reidheads responded to CFC's Motion for Damages and Attorneys' fees by attempting to reargue the underlying merits of CFC's counterclaims. Specifically, the Reidheads contend that (1) CFC is not a bona fide successor-in-interest to Apache Mining Company; (2) CFC's claims are barred by the statute of limitations; (3) the doctrine of frustration should apply since CFC did not make a demand upon the Reidheads for the cinder and because Reidhead Sand & Rock, Inc. never paid for the processing of any such materials; (4) there is no evidence that the Reidheads converted cinder to their own use; and (5) because CFC did not possess an interest in the subject property, a slander of title action cannot be maintained. The Reidheads also responded in opposition to CFC's request for attorneys' fees, contending that an award of fees in this case would constitute an extreme hardship for Jean Reidhead, the widow of Terrence Reidhead, and that an award of fees is not appropriate under A.R.S. § 12-349, because the Reidhead's claims were dismissed on statute of limitations grounds and were not brought in bad faith.

Following the filing of the Reidhead's response in opposition, CFC sought leave from the Court to lodge a reply brief. After reviewing CFC's Motion for Leave and proposed reply, the Court deems it appropriate to grant CFC's Motion for Leave to File a Reply Brief. (Doc. 84). Turning to the substance of its reply brief, CFC states that the Reidheads have not submitted any evidence refuting CFC's damages calculations, and have instead attempted to reopen the issue of liability, which the Court conclusively resolved against the Reidheads when granting CFC's Motion for Default Judgment. In light of the lack of conflicting

evidence, CFC again urges the Court to grant its requested relief, and to do so without holding an evidentiary hearing on the matter. See Rolle v. Law Office of Samuel Streeter, PLLC, 2010 U.S. Dist. LEXIS 26174, *23 n.8 (D. Ariz. Mar. 2, 2010) (noting that Rule 55(b) of the Federal Rules of Civil Procedure "allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment.").

As CFC notes, a default judgment "conclusively establishes" the Reidhead's liability on all claims that make up CFC's well pled counterclaim. See Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990). As such, the Reidheads are now precluded from attempting to re-litigate their defenses. The time for presenting arguments on the merits has passed. The only relevant issue at this point in this case concerns the Reidhead's liability on CFC's counterclaim, which asserted claims for Breach of Contract (Count One), Conversion (Count Two), Constructive Fraud (Count Three), Trespass (Count Four), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Five), Ejectment (Count Six), Slander of Title (Count Seven), Unjust Enrichment (Count Eight), and Specific Performance–Easement (Count Nine). (See Doc. 34, pp. 14-20).

While "[t]he evident policy of [Rule 55] is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages," LG Elecs., Inc. v. Advance Creative Computer Corp., 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002), the standard of proof for verifying damages is "relatively lenient." Philip Morris U.S.A. Inc. v. Castworld Prods., 219 F.R.D. 494, 498 (C.D. Cal. 2003). A district court may assess damages either by relying on the declarations submitted by the prevailing party or by

conducting a full evidentiary hearing, if damages cannot be easily computed. <u>See</u> Fed. R. Civ. P. 55(b)(2); <u>Sony Music Enm't</u>, 2009 U.S. Dist. LEXIS 69865, *2-3.   Here, CFC has submitted evidence that supports its proffered damages, and this evidence is uncontradicted by the non-moving party. After reviewing all of the pleadings, the Court has determined that it may only grant a portion of the relief sought by CFC in its Motion for Damages and Attorneys' Fees in the absence of an evidentiary hearing.

As to CFC's request for $1.4 million in consequential damages, the Court notes that "[c]onsequential damages are those reasonably foreseeable  losses that flow from a breach of contract." <u>McAlister v. Citybank (Ariz.)</u>, 829 P.2d 1253, 1257 (Ariz. Ct. App. 1992).  The common law rule for consequential damages is that they "are not usually recoverable in an action for breach of contract." <u>Contempo Metal Furniture Co. of Cal. v. East Tex. Motor Freight Lines</u>, 661 F.2d 761, 765 (9th Cir. 1981).  This because the recovery of consequential damages in a breach of contract action requires the prevailing party prove that the damages it seeks were "caused by a breach of contract" and were "reasonably supposed to be within the contemplation of the parties at the time of the contracting."  <u>Seekings v. Jimmy GMC, Inc.</u>, 638 P.2d 210, 215 (Ariz. 1981) (citing <u>All American School Supply Co. v. Slavens</u>, 609 P.2d 46 (Ariz. 1980)).  Although CFC has cited to Mr. Meyers' affidavit explaining how CFC loaned $1,435,860.18 to Apache, Azteca and Industrias based on the promises from the Reidheads to provide cinders, some factual questions still exist as to whether these loans were actually contemplated by CFC and the Reidheads at the time their contract was formed. The Court also requires further factual development in order to link CFC's complete loss of approximately $1,435,860.18 in loans to the Reidheads' contractual breach. As such, without

an evidentiary hearing, the Court cannot grant CFC's request for consequential damages, particularly when such damages are typically unavailable under contract law.

As to CFC's conversion claim, the Court is satisfied with CFC's factual submissions, which set forth a sufficient and plausible evidentiary basis for its requested relief of $1 million dollars, which, according to the undisputed evidence, is the fair value of the converted cinders when used as construction fill. The Court may therefore properly award damages for CFC's conversion claim at $1 million without requiring an evidentiary hearing.

As to CFC's slander of title claim, CFC has not cited to, and the Court is not aware of, any Arizona state law decision setting the appropriate measure of damages in an action for slander of title. "Arizona courts generally follow the RESTATEMENT in the absence of controlling Arizona authority." Gau v. Smitty's Super Valu, Inc., 901 P.2d 455 (Ariz. Ct. App. 1995) (citing Dixon v. City of Phoenix, 845 P.2d 1107, 1116 (Ariz. Ct. App. 1992)). In generally discussing compensatory tort damages, comment (a) to the RESTATEMENT (SECOND) OF TORTS § 903 states that, "[w]hen there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed." Furthermore, § 929 of the RESTATEMENT specifically discusses damages that are available in tort actions where there has been harm to land from past invasions. This portion of the RESTATEMENT notes that "[i]f one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for [,] the difference between the value of the land before the harm and the value after the harm . . . [] the loss of use of the land, and [] discomfort and annoyance

to him as an occupant." RESTATEMENT (SECOND) OF TORTS § 929(1)(a)-(b). As to CFC's requested damages, in light of the relevant standard for tort damages under the RESTATEMENT, it is not altogether clear how CFC is entitled to $350,000, which appears to be the full value of the property. In other words, $350,000 seems to equal to the total value of CFC's property "before the harm" committed by the Reidheads. Under the RESTATEMENT, however, CFC would not be able to recover the full value of the property before title was slandered. Instead, CFC would only be eligible to recover the difference between $350,000— or the full value of the property unslandered—and the value of the property in its current slandered state. While CFC has offered some evidence suggesting that the property is now worth under $100,000, the Court cannot make a precise determination on the value of CFC's property "after the harm" without conducting an evidentiary hearing. As such, the Court cannot currently grant CFC's request for $350,000. It also bears mentioning that CFC may be entitled under the RESTATEMENT to recover additional damages on its slander of title claim in the form of lost use and "discomfort and annoyance" damages. Such harms are also not easily computable and would require an evidentiary hearing.

Lastly, with respect to CFC's request for attorneys' fees, the Reidheads have failed to oppose the legal basis for an award fees under either A.R.S. § 12-341.01 or § 12-349, and the Reidheads have not challenged the reasonableness of the fees requested. Despite the Reidhead's lack of objection, the Court has reviewed CFCs fee application and determined that CFC's fee request is reasonable and comports with relevant legal principles governing attorneys' fee awards under Arizona law. The Court is extremely familiar with the procedural history of this litigation, and is confident that CFC's fee application accurately

reflects the amount of time and effort it has taken to bring this case to its final resolution. As such, it is proper for the Court to grant CFC's request for attorney's fees in the full amount that has been sought.

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part and denying in part Defendants/Counterclaimants Caribbean Financial Corporation's Motion for Attorneys' Fees and Damages. (Doc. 82).

**IT IS FURTHER ORDERED** granting Defendants/Counterclaimants Caribbean Financial Corporation's Motion for Leave to File a Reply Brief. (Doc. 84).

**IT IS FURTHER ORDERED** directing Plaintiffs/Counterdefendants Jean Reidhead, Patrick Kent Reidhead, and Reidhead Sand & Rock, Inc. ("the Reidheads") to pay Defendants/Counterclaimants Caribbean Financial Corporation ("CFC") $1 million in damages to account for the lost value of converted cinders that CFC could have ben used as construction fill.

**IT IS FURTHER ORDERED** denying Defendants/Counterclaimants Caribbean Financial Corporation ("CFC") request for consequential damages on its breach of contract claim or slander of title damages without an evidentiary hearing before this Court.

**IT IS FURTHER ORDERED** directing Plaintiffs/Counterdefendants Jean Reidhead, Patrick Kent Reidhead, and Reidhead Sand & Rock, Inc. ("the Reidheads") to pay Defendants/Counterclaimants Caribbean Financial Corporation ("CFC") $91,192.50 in attorneys' fees.

**IT IS FURTHER ORDERED** that CFC shall have until the close of business,

Wednesday, August 4, 2010 to inform the Court in writing whether it will accept the damages that have been awarded, thereby permitting the Court to close the case, or whether CFC requires the Court to set an immediate evidentiary hearing.

DATED this 29th day of July, 2010.

Mary H. Murgula
United States District Judge